1

2

3

4

5

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**
**RENO, NEVADA**

6 | RONALD WHEELER,                              )        3:09-CV-147-ECR-VPC

7 |       Plaintiff,                            )

8 | vs.                                         )        <u>**Order**</u>

9 | STATE OF NEVADA ex rel. its                 )
DEPARTMENT OF CORRECTIONS; WARDEN             )

10 | E.K. MCDANIEL, individually and            )
in his official capacity as Warden )

11 | of Ely State Prison; and C.O.             )
WILLIAMS OWINGS, individually and            )

12 | in his capacity as Correctional           )
Officer of Ely State Prison,                  )

13 |                                             )
      Defendants.                             )

14 |                                             )

15 | _____ )

16       This case arises out of the termination of Ronald Wheeler

17 ("Wheeler") from his position as Correctional Sergeant at Wells

18 Conservation Camp ("Wells").  Defendants are the State of Nevada

19 Department of Corrections ("NDOC"), Plaintiff's former employer,

20 E.K. McDaniel ("McDaniel"), the Warden of Ely State Prison and

21 William Owings ("Owings"), a correctional officer at Ely State

22 Prison.  Now pending is Defendants' motion for summary judgment

23 (#19).  Plaintiff opposed (#24) the motion, and Defendants replied

24 (#25).  For the reasons stated below, the motion (#19) will be

25 granted.

26

27

28

## I. Factual and Procedural Background

Wheeler worked for NDOC for nine years until his termination on February 28, 2007.  (Compl. ¶ 5 (#1).)  On July 31, 2006, Owing submitted a report to Associate Warden Debra Brooks ("Brooks") regarding various allegations of misconduct by the Plaintiff. (Brooks Aff. ¶ 3 (#19-6).)  On August 2, 2006, Plaintiff was placed on administrative leave.  (Order Dismissing Appeal, Crevling Aff., Ex. 4 (#19-7).)

In August 2006, Jerry Thompson ("Thompson"), a criminal investigator in the Department of the Inspector General, was assigned to investigate the allegations of misconduct.  (Thompson Aff. ¶ 2 (#19-5).)  Thompson interviewed several current and former Wells employees and inmates, and at the conclusion of his investigation he completed a report, containing his investigative findings.  (Id.)  McDaniels recommended termination based on the sustained allegations described in Thompson's report.  (McDaniels Aff. ¶ 5 (#19-4).)

A pre-disciplinary hearing was held on February 22, 2008, prior to which Plaintiff received a specificity of charges.  (Id.)  After the hearing officer found that Plaintiff committed the violations, Plaintiff was terminated.  (Id.)  Plaintiff appealed the decision to the Nevada State Personnel Commission; they affirmed NDOC's termination.  (Id.)  Plaintiff appealed the Nevada State Personnel Commission's determination to the Nevada State District Court, which affirmed NDOC's decision.  (Order Dismissing Appeal, Ex. 4 (#19-7).) Plaintiff appealed the District Court's Order to the Nevada Supreme

2

1  Court; that appeal is still pending.  (Wheeler Dep. at 217:10-12
2  (#19-1).)

3     On February 6, 2009, Plaintiff filed a lawsuit (#1) in state
4  court.  On March 23, 2009, Defendants removed (#1) the action to
5  federal court.  On February 1, 2010, Defendants filed a motion (#19)
6  for summary judgment.  Plaintiff opposed (#24) the motion, and
7  Defendants replied (#25).

8

9               **II. Motion for Summary Judgment Standard**

10     Summary judgment allows courts to avoid unnecessary trials
11  where no material factual dispute exists.  N.W. Motorcycle Ass'n v.
12  U.S. Dep't of Agric., 18 F.3d 1468, 1471 (9th Cir. 1994).  The court
13  must view the evidence and the inferences arising therefrom in the
14  light most favorable to the nonmoving party, Baqdadi v. Nazar, 84
15  F.3d 1194, 1197 (9th Cir. 1996), and should award summary judgment
16  where no genuine issues of material fact remain in dispute and the
17  moving party is entitled to judgment as a matter of law. FED. R.
18  CIV. P. 56(c).  Judgment as a matter of law is appropriate where
19  there is no legally sufficient evidentiary basis for a reasonable
20  jury to find for the nonmoving party. FED. R. CIV. P. 50(a).  Where
21  reasonable minds could differ on the material facts at issue,
22  however, summary judgment should not be granted.  Warren v. City of
23  Carlsbad, 58 F.3d 439, 441 (9th Cir. 1995), cert. denied, 116 S.Ct.
24  1261 (1996).

25     The moving party bears the burden of informing the court of the
26  basis for its motion, together with evidence demonstrating the
27  absence of any genuine issue of material fact.  Celotex Corp. v.

28                              3

1  <u>Catrett</u>, 477 U.S. 317, 323 (1986).  Once the moving party has met
2  its burden, the party opposing the motion may not rest upon mere
3  allegations or denials in the pleadings, but must set forth specific
4  facts showing that there exists a genuine issue for trial.  <u>Anderson</u>
5  <u>v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  Although the
6  parties may submit evidence in an inadmissible form - namely,
7  depositions, admissions, interrogatory answers, and affidavits -
8  only evidence which might be admissible at trial may be considered
9  by a trial court in ruling on a motion for summary judgment.  FED.
10  R. CIV. P. 56(c); <u>Beyene v. Coleman Sec. Servs.</u>, Inc., 854 F.2d 1179,
11  1181 (9th Cir. 1988).

12      In deciding whether to grant summary judgment, a court must
13  take three necessary steps: (1) it must determine whether a fact is
14  material; (2) it must determine whether there exists a genuine issue
15  for the trier of fact, as determined by the documents submitted to
16  the court; and (3) it must consider that evidence in light of the
17  appropriate standard of proof.  <u>Anderson</u>, 477 U.S. at 248.  Summary
18  judgment is not proper if material factual issues exist for trial.
19  <u>B.C. v. Plumas Unified Sch. Dist.</u>, 192 F.3d 1260, 1264 (9th Cir.
20  1999).  "As to materiality, only disputes over facts that might
21  affect the outcome of the suit under the governing law will properly
22  preclude the entry of summary judgment."  <u>Anderson</u>, 477 U.S. at 248.
23  Disputes over irrelevant or unnecessary facts should not be
24  considered.  <u>Id.</u>  Where there is a complete failure of proof on an
25  essential element of the nonmoving party's case, all other facts
26  become immaterial, and the moving party is entitled to judgment as a
27  matter of law.  <u>Celotex</u>, 477 U.S. at 323.  Summary judgment is not a

28                                          4

disfavored procedural shortcut, but rather an integral part of the federal rules as a whole.  Id.

### III. Discussion

Defendants seek summary judgment on all of Plaintiff's claims. The individually named defendants also assert the defense of qualified immunity with respect to Plaintiff's claims arising under 42 U.S.C. § 1983.

For the following reasons, we conclude that summary judgment in favor of all Defendants is appropriate.  Because Defendants are entitled to summary judgment, we do not need to reach the issue of qualified immunity.

A. First Amendment Retaliation

Plaintiff's first claim alleges a violation of his rights under the First Amendment.  Specifically, Plaintiff alleges that his termination was the result of three incidents of protected speech: (1) a question, at the Warden's weekly meeting about when the state contracted doctor was scheduled to come to Wells and a report that the doctor has not been to Wells in three months; (2) an exchange between McDaniel and Plaintiff, at the Warden's weekly meeting, about whether officers at Wells could do their firearms qualifications with their personal firearms; and (3) a telephone call to Karen Kendall ("Kendall"), NDOC's head of training, reporting, inter alia, that officers at Wells were receiving in-service training by videotape.  (D.'s Mot. for Summ. J. at 10 (#19).)

The First Amendment prohibits state retaliation against a public employee for speech made as a citizen on a matter of public concern. Connick v. Myers, 461 U.S. 138, 147 (1983). Analysis of a First Amendment retaliation claim against a government employer involves a sequential five-step series of questions: (1) whether the plaintiff spoke on a matter of public concern; (2) whether the plaintiff spoke as a private citizen or public employee; (3) whether the plaintiff's protected speech was a substantial or motivating factor in the adverse employment action; (4) whether the state had an adequate justification for treating the employee differently from other members of the general public; and (5) whether the state would have taken the adverse employment action even absent the protected speech. Derochers v. City of San Bernardino, 572 F.3d 703, 708-709 (9th Cir. 2009).

A public employee addresses a matter of public concern when his speech relates to an issue of "political, social, or other concern to the community." Connick, 461 U.S. at 146. "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." Id. at 147-48. "Speech that concerns issues about which information is needed or appropriate to enable the members of society to make informed decisions about the operation of their government merits the highest degree of first amendment protection." Coszalter v. City of Salem, 320 F.3d 968, 973 (9th Cir. 2003). On the other hand, "speech that deals with 'individual personnel disputes and grievances' and that would be of 'no relevance to the public's evaluation of the performance of

6

1 governmental agencies' is generally not of 'public concern.'"  Id.
2 (quoting McKinley v. City of Eloy, 705 F.2d 1110, 1114 (9th Cir.
3 1983)).

4      When determining whether a public employee is speaking as a
5 citizen, the "critical inquiry" is whether the employee engaged in
6 the relevant speech pursuant to his "official duties." Freitag v.
7 Ayers, 468 F.3d 528, 545 (9th Cir. 2006).  The First Amendment does
8 not "shield[] from discipline the expressions employees make
9 pursuant to their professional duties." Garcetti v. Ceballos, 547
10 U.S. 410, 425 (2006).  That an employee expresses his views "inside
11 his office, rather than publicly, is not dispositive." Derochers,
12 572 F.3d at 714.  A "limited audience," however, "weighs against a
13 claim of protected speech."  Id. (internal quotation marks and
14 citation omitted).

15      For the reasons discussed below, we conclude that Plaintiff's
16 First Amendment claim fails.  Thus, the individual defendants are
17 entitled to qualified immunity and all defendants are entitled to
18 summary judgment on this claim.

19           1. Doctor Visits

20      Plaintiff's question, about when the state contracted doctor
21 was scheduled to come to Wells, and report that the doctor has not
22 been to Wells in three months, were made at a weekly Warden's staff
23 meeting.  (McDaniel Aff. ¶ 3 (#19-4).)  The Warden's staff meetings
24 are designed for various division and facility heads to bring to the
25 Warden's attention matters occurring at their facilities, ask
26 questions and coordinate matters.  (Id.)  According to the minutes
27 of the meeting at issue, Plaintiff "asked when the doctors visits

28                                   7

1  will be occurring at WCC, and he was told next week."  (Minutes,

2  McDaniel Aff., Ex. 1 (#19-4).)

3      In this case, we need not reach the issue of whether

4  Plaintiff's speech were on a matter of public concern.  The

5  evidence, in particular Plaintiff's deposition testimony,

6  unequivocally demonstrates that Plaintiff's speech regarding doctor

7  visits was made pursuant to his professional duties:

8      Q: Was it your understanding that what you were reporting
        about doctor's visits, the doc not being there for a few
9      months, that that was something that was supposed to be
        reported at these meetings?
10     A: That's where he's out of.  That's how you find out.
        He's assigned to Ely.  He works in Ely.  If I bring it up
11     and ask it, they know down there.
        Q: The purpose of the meeting is to ask those kind of
12     questions?
        A. Yes.
13     Q: When you made that statement you were on duty?
        A: Yes.
14     Q: You were making it in the capacity as someone appearing
        on behalf of the head of the Conservation Camp?
15     A: Yes, sir.
        Q: Is it your understanding that you as the Sergeant, it
16     was your responsibility to report these kinds of things?
        A: I already took them to the Lieutenant.  Never got an
17     answer.  So I went up in my chain of command.
        Q: The question was it part of your responsibilities to
18     report these kinds of things?
        A: Yeah.
19
        (Dep. of Wheeler 94:14-95:14 (#19-1).)  The First Amendment
20
  does not "shield[] from discipline the expressions employees make
21
  pursuant to their professional duties."  Garcetti v. Ceballos, 547
22
  U.S. 410, 425 (2006).  Because Plaintiff spoke as a public employee,
23
  not as a citizen, we need not address the remaining prongs of the
24
  test enunciated in Derochers.
25

26

27

28                                        8

## 2. Use of Personal Weapons for Qualification

Plaintiff's second instance of speech involved an exchange between McDaniel and Plaintiff at the same Warden's weekly meeting about whether officers at Wells could do their semi-annual firearms qualifications[1] using their personal firearms.  (Wheeler Dep. at 94:14-25; 101:15-25 (#19-1).)

In this case, the "content, form, and context" of the speech indicates Plaintiff was not speaking on a matter of public concern. See Connick, 461 U.S. at 147-48.  Plaintiff's speech concerned a topic particular to Plaintiff — his own ability to qualify using his personal weapon.  The content thus falls more along the lines of an "individual personnel dispute[s]" than a matter relevant "to the public's evaluation of the performance of governmental agencies." Coszalter, 320 F.3d at 973. Moreover, Plaintiff spoke at a regularly scheduled work-place meeting.  His speech did not, and was not intended to, make the public aware of any deficiency in firearms qualification protocols.  See Derochers, 572 F.3d at 714 (noting that the form of the speech at issue — an employee grievance — militated against a finding of public concern because the public was never made aware of the speakers' concerns).  Finally, Plaintiff's speech, even under the most generous reading, did not seek to "bring to light" any "potential wrongdoing or breach of public trust." Connick, 461 U.S. at 148.  We thus conclude that Plaintiff's speech was not protected.  Because Plaintiff's speech was not protected, we

---

[1] The record does not elucidate what exactly doing a firearms qualification entails.  The details of the process, however, are not pertinent to this analysis.

1  need not address the remaining prongs of the test enunciated in
2  <u>Derochers</u>.

3            3. Telephone Call to Karen Kendall

4       Plaintiff's third instance of speech involved a telephone call
5  he made to Kendall, NDOC's head of training, reporting, inter alia,
6  that officers at Wells were receiving in-service training by
7  videotape. (D.'s Mot. for Summ. J at 10 (#19).)  In the telephone
8  call, Plaintiff reported to Kendall that officers at WCC were being
9  trained by videotape, rather than in person. (Wheeler Dep. at
10 71:13-15 (#19-1).)  Plaintiff also explained he was doing training
11 on the Glock firearm with only one range master when the
12 administrative regulations required two. (<u>Id.</u> 71:2-7.)

13      This instance of speech is likewise not protected. There is no
14 evidence Plaintiff reported the issue to anyone outside the
15 department or indeed anyone other than Kendall. Most importantly,
16 however, Plaintiff made the call to Kendall from work pursuant to
17 his professional duties. (<u>Id.</u> at 74:1-5); <u>Garcetti</u>, 547 U.S. at
18 425.

19         B. Denial of Due Process

20      The Fourteenth Amendment's guarantee of due process applies
21 when a constitutionally protected liberty or property interest is at
22 stake. <u>Board of Regents v. Roth</u>, 408 U.S. 564, 569 (1972). "A
23 legitimate claim of entitlement to continued employment absent
24 'sufficient cause' is a property interest requiring the protections
25 of procedural due process." <u>Arnett v. Kennedy</u>, 416 U.S. 134, 208
26 (1974).

27

28                                    10

1    Defendants contend that there is no evidence to support a due
2  process claim.  Plaintiff claims that the process of appointing
3  administrative hearing officers is "biased on the face of it."
4  (P.'s Opp. at 7 (#24).)  In addition, Plaintiff claims that the
5  particular hearing officer who presided over his first appeal, Bill
6  Kockenmiester, "was promoted to a full time position as the Northern
7  Nevada Hearing Officer after the previous full time hearing officer
8  was terminated in close temporal proximity to a personal decision
9  that was highly unpopular with State of Nevada administrators."
10 (Id.)  In support of these various allegations, Plaintiff provides
11 one piece of evidence: an affidavit by his lawyer.  This affidavit
12 is not in conformity with Rule 56(e) of the Federal Rules of Civil
13 Procedure: it contains factual conclusions to which the affiant
14 would not be entitled to testify at the time of trial and regarding
15 which he has no personal knowledge.  See FED. R. CIV. P. 56(e)(1).
16 Plaintiff has therefore not carried his burden of "set[ting] out
17 specific facts showing a genuine issue for trial."  FED. R. CIV. P.
18 56(e)(2).  Summary judgment in favor of Defendants, and qualified
19 immunity with respect to the individual defendants, is appropriate
20 as to this claim.

21    C. Intentional Infliction of Emotional Distress

22    Plaintiff's third claim for relief alleges intentional
23 infliction of emotional distress.  The elements of a cause of action
24 for intentional infliction of emotional distress are "(1) extreme
25 and outrageous conduct with either the intention of, or reckless
26 disregard for, causing emotional distress, (2) the plaintiff's
27 having suffered severe or extreme emotional distress and (3) actual

28                                    11

1    or proximate causation." <u>Dillard Dept. Stores, Inc. v. Beckwith</u>,

2    989 P.2d 882, 886 (Nev. 1999).  Extreme and outrageous conduct is

3    that which is "outside all possible bounds of decency and is

4    regarded as utterly intolerable in a civilized community." <u>Maduike</u>

5    <u>v. Agency Rent-A-Car</u>, 953 P.2d 24, 26 (Nev. 1998)(internal quotation

6    marks and citation omitted).  "Severe or extreme emotional distress"

7    is distress "so severe and of such intensity that no reasonable

8    person could be expected to endure it." <u>Alam v. Reno Hilton Corp.</u>,

9    819 F. Supp. 905, 911 (D. Nev. 1993).  A claim for intentional

10   infliction of emotional distress operates on a continuum: the less

11   extreme the outrage, the greater the need for evidence of physical

12   injury or illness from the emotional distress. <u>Chowdhry v. NLVH</u>,

13   <u>Inc.</u>, 851 P.2d 459, 462 (Nev. 1993)

14        There is no evidence in the record that could plausibly support

15   this claim; therefore, we will award summary judgement in favor of

16   Defendants as to this claim.

17        D. Breach of the Implied Covenant of Good Faith and Fair

18   Dealing

19        Plaintiff's fourth claim for relief alleges breach of the

20   implied covenant of good faith and fair dealing.  "When one party

21   performs a contract in a manner that is unfaithful to the purpose of

22   the contract and the justified expectations of the other party are

23   thus denied, damages may be awarded against the party who does not

24   act in good faith." <u>Hilton Hotels Corp. v. Butch Lewis Prods.</u>,

25   <u>Inc.</u>, 808 P.2d 919, 923 (Nev. 1991).

26        Defendants contend that there is no evidence that the parties'

27   relationship was governed by contract.  In his opposition, Plaintiff

28                                      12

does not provide any evidence in support of the contrary
proposition.  Therefore, we will grant summary judgment in favor of
Defendants as to Plaintiff's fourth claim.

## IV. Conclusion

The speech at issue in this case is not "protected speech"
within the meaning of the First Amendment.  There is no admissible
evidence in the record to support Plaintiff's Due Process claim.
There is likewise insufficient evidence in the record to support
Plaintiff's claims for intentional infliction of emotional distress
and breach of the implied covenant of good faith and fair dealing.


**IT IS, THEREFORE, HEREBY ORDERED** that Defendants' motion for
Summary Judgment (#19) is **GRANTED**.

The Clerk shall enter judgment accordingly.

DATED: July 15, 2010.

_Edward C. Reed._
_____
UNITED STATES DISTRICT JUDGE

13